[No. G041305. Fourth Dist., Div. Three. Jan. 15, 2009.]

DAVID F. VEYNA et al., Plaintiffs and Respondents, v.
ORANGE COUNTY NURSERY, INC., et al., Defendants and Appellants.

**148**

## COUNSEL

Snell & Wilmer, Richard A. Derevan, Todd E. Lundell; Balmages & Davidson, Michael G. Balmages and Douglas B. Davidson for Defendants and Appellants.

Bartko Zankel Tarrant & Miller, Glenn P. Zwang and Robert L. Wainess for Plaintiffs and Respondents.

## OPINION

**THE COURT.**[*]—Minority shareholders of Orange County Nursery, Inc. (the moving parties), filed a complaint for involuntary dissolution of the corporation. (Corp. Code, § 1800, subd. (b).) The corporation (the purchasing party), through its president, Robert Veyna, elected to buy out the moving parties in order to avoid dissolution. (Corp. Code, § 2000.)[1] After reviewing the

---

[*]Sills, P. J., Rylaarsdam, J., and Fybel, J.

[1] Corporations Code section 2000 provides:

"(a) Subject to any contrary provision in the articles, in any suit for involuntary dissolution, or in any proceeding for voluntary dissolution initiated by the vote of shareholders representing

independent appraisal report, the trial court entered a decree on November 21, 2008, fixing the fair value of the moving parties' shares and ordering that

only 50 percent of the voting power, the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding (the 'moving parties') at their fair value. The fair value shall be determined on the basis of the liquidation value as of the valuation date but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation. In fixing the value, the amount of any damages resulting if the initiation of the dissolution is a breach by any moving party or parties of an agreement with the purchasing party or parties may be deducted from the amount payable to such moving party or parties, unless the ground for dissolution is that specified in paragraph (4) of subdivision (b) of Section 1800. The election of the corporation to purchase may be made by the approval of the outstanding shares (Section 152) excluding shares held by the moving parties.

"(b) If the purchasing parties (1) elect to purchase the shares owned by the moving parties, and (2) are unable to agree with the moving parties upon the fair value of such shares, and (3) give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if such expenses are recoverable under subdivision (c), the court upon application of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court of the proper county by the purchasing parties in the case of a voluntary election to wind up and dissolve, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties.

"(c) The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining such value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree. If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties. Any shareholder aggrieved by the action of the court may appeal therefrom.

"(d) If the purchasing parties desire to prevent the winding up and dissolution, they shall pay to the moving parties the value of their shares ascertained and decreed within the time specified pursuant to this section, or, in case of an appeal, as fixed on appeal. On receiving such payment or the tender thereof, the moving parties shall transfer their shares to the purchasing parties.

"(e) For the purposes of this section, 'shareholder' includes a beneficial owner of shares who has entered into an agreement under Section 300 or 706.

"(f) For the purposes of this section, the valuation date shall be (1) in the case of a suit for involuntary dissolution under Section 1800, the date upon which that action was commenced, or (2) in the case of a proceeding for voluntary dissolution initiated by the vote of shareholders representing only 50 percent of the voting power, the date upon which that proceeding was initiated. However, in either case the court may, upon the hearing of a motion by any party, and for good cause shown, designate some other date as the valuation date."

unless the purchasing party made payment for the shares in cash by December 15, 2008, judgment would be entered winding up and dissolving the corporation.

Without making the required payment, or first seeking relief in the trial court, the purchasing party filed a notice of appeal December 5, 2008.[2] Three days later it filed the instant petition for writ of supersedeas in which it asks this court to stay the trial court decree pending resolution of the appeal. It argues that once an appeal is perfected the decree's requirement that payment be made for the shares, in this case by December 15, is automatically stayed until the reviewing court, at the end of the appeal, fixes the fair value of the shares and specifies when payment must be made. It also argues that if the payment requirement is not automatically stayed then this court should exercise its discretion to issue a stay here because it would be unfair to force the purchasing party to purchase the shares now in order to maintain the appeal when it cannot know the fair value of the shares until after the appeal is decided. Robert Veyna assures us, moreover, in a declaration in support of the supersedeas petition that "[i]f the result of the appeal is favorable, it is the company's present intention to elect to purchase the minority shares and the company is confident it will have financial resources to do so."

This court requested and received opposition, issued a temporary stay, and heard oral argument. (Cal. Rules of Court, rule 8.112(d)(1).) Having considered the arguments of the parties and the equities of the matter, we will deny the petition for writ of supersedeas and dissolve the temporary stay previously issued. We hold the trial court's alternate decree—and specifically its requirement that the purchasing party make payment for the moving parties' shares by December 15 or see dissolution of the corporation—is not automatically stayed simply by perfecting the appeal. Our holding is based on long-established Supreme Court precedent which holds that judgments in special proceedings and self-executing orders are not automatically stayed by the filing of a notice of appeal. We also decline to exercise our discretionary authority to issue supersedeas on the ground that any such request must be made in the first instance in the trial court, which has not yet been done.

I

Orange County Nursery, Inc., is a closely held corporation founded in 1887 as the Orange County Nursery and Land Company. Margarito Veyna purchased the nursery as an ongoing concern sometime in the 1930's. The

---

[2] The notice of appeal lists the corporation and Robert Veyna as appellants. Whether Veyna is an aggrieved party and has standing to appeal seems doubtful given it was the corporation alone that elected to purchase the shares. We will decide the supersedeas petition because the corporation clearly has standing so the appeal and the petition for writ of supersedeas are properly before us.

company was incorporated in 1950 and has been continuously run by the Veyna family. Today, it operates as a wholesale tree nursery selling bare root and containerized trees with numerous growing grounds in California and Texas.

Locked in a dispute over money and control over the day-to-day operations of the business, Veyna's descendants have split into three camps. The shareholders in control of the corporation today, including president Robert Veyna, own 50.25 percent of the total common stock of the corporation. The moving parties, who controlled the business for two years beginning in 2001, own 40.25 percent of the stock. The remaining shares, the record suggests, are held by a separate branch of the family which is apparently just watching from the sidelines. Not surprisingly, the two disputing camps blame each other for mismanaging and running down the business: the moving parties complain that Robert Veyna's side of the family is driving the business inevitably towards bankruptcy, while Veyna and the majority shareholders say they are making sacrifices in an attempt to preserve the company after the moving parties and their side of the family all but sent it into bankruptcy.

On August 4, 2006, the matter came to a head. The moving parties filed a complaint for involuntary dissolution of the corporation alleging the business has been run for the sole benefit and advantage of the majority shareholders to the detriment of the minority shareholders. On July 27, 2007, about one month before trial, the parties filed a stipulation wherein the corporation agreed to follow the buyout procedures set forth in Corporations Code section 2000. The stipulation provided:

"1. The Purchasing Party has elected to purchase the Shares owned by the Moving Parties pursuant to Corporations Code § 2000.

"2. The Purchasing Party and the Moving Parties are unable to agree upon the fair value of such shares.

"3. The Purchasing Party will give a bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the Moving Parties if such expenses are recoverable under Corporations Code § 2000(c), in an amount set by the Court.

"4. This stipulation and order shall be deemed an 'application' to the Court by the Purchasing Party, pursuant to Corporations Code § 2000(b), for the Court to issue orders to stay the winding up and dissolution proceeding and to set any other procedures under any subsection of Corporations Code § 2000, as the Court, in its discretion, sees fit and proper . . . ."

On August 10, 2007, and pursuant to the stipulation, the court entered an order staying the winding up and dissolution of the corporation. The order set a valuation date of August 4, 2006, and required the purchasing party to post a bond of $150,000 "to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties in the event that [the purchasing parties] do not make a cash payment for the shares held by the [moving parties]" in the amount fixed and within the time specified. The bond, we infer, was posted.

The order then specified that "[a]fter the Court has entered its order fixing the fair value of the Shares," the purchasing party "shall make a cash payment for the Shares, within 30 (thirty) days, in the amount determined by the Court. If such payment is timely made, the Minority shall transfer its shares and resign from the board of directors concurrently with such payment." The payment date was not absolute, however. The order further provided that if the purchasing party "fails to make payment for the Shares within the time specified, or such later time as may hereafter be ordered by the Court upon 'good cause' shown by written application, judgment shall be entered" liquidating and dissolving the corporation.

Three independent appraisers were appointed. It is apparent from the record we have that the parties attempted to play a very vigorous role in the appraisal process. The three appraisers were, as the trial court observed, "inundated with information supplied by counsel as well as requests/demands for information made by counsel." Someone must have complained because on August 26, 2008, the court issued a minute order wherein it detailed the problems the independent appraisers were having finishing the report and concluded: "In short, at this juncture it is truly up to the appraisers to decide how they will do their work, what methodology is to be employed, and what economic factors will be considered in rendering their opinions. Given the lengthy history of this process to this date, the Court believes it is time for the parties and their counsel to step back and to allow the appraisals to be refined and presented to the Court."

On October 14, 2008, the appraisers submitted a unanimous appraisal report. They determined the net worth of the corporation as of August 4, 2006, was $19.4 million and that its discounted fair value, for purposes of Corporations Code section 2000, was $12.19 million. The report contained the following caveat: "It should be noted that our opinion of value excludes any adjustment for hypothetical deferred taxes and transaction costs that would be associated with the actual liquidation of the Company's assets." The appraisers explained in the concluding paragraph that these issues

involve "issues of both fact and law, and are reserved to the discretion of the Court."

The moving parties moved to confirm the appraisal report even though they thought it substantially undervalued the fair value of the corporation and the moving parties' shares. The purchasing party opposed the motion on the ground the appraisal report overvalued the fair value of the corporation and the moving parties' shares because it failed to adjust for liquidation costs and consider fire sale conditions.[3] Following a hearing at which there was substantial discussion about how the three appraisers determined the fair value of the corporation's stock, the trial court issued the following order:

"1. The Appraisal Report submitted by the Court-appointed Appraisers in this matter on or about October 14, 2008, which concludes that the Fair Value of 100% of the common stock of Orange County Nursery, Inc. and Subsidiaries at August 4, 2006 is $12,190,000, is hereby CONFIRMED in its entirety, subject to the terms and conditions set forth herein;

"2. Pursuant to Corporations Code § 2000, the Fair Value of the 40.25% of Orange County Nursery's common stock owned by plaintiffs/moving parties (the 'Shares') is $4,906,475.00 ('Share Value');

"3. The Court awards one year of interest on the Share Value, at the legal rate of seven percent (7%) per year, in the amount of $343,453, for a total award of $5,249,928.00;

"4. [The purchasing party] shall pay plaintiffs the sum of $5,249,928.00, by cashier's check or wire transfer, payable to Bartko Zankel Tarrant & Miller Trust Account, to be received by plaintiffs' counsel on or before December 15, 2008 at 5:00 p.m.

---

[3] One of the weaknesses of the petition for supersedeas is the absence of many documents. The petition was filed before a complete record was prepared and thus, by rule, it was required to include any "document from the trial court proceeding that is necessary for proper consideration of the petition." (Cal. Rules of Court, rule 8.112(a)(4)(B)(iv).)

Here, the petition does not include the moving parties' motion to confirm the appraisal report and the opposition thereto. Given only the moving parties' reply is included, the purchasing party must believe the reply is sufficient for proper consideration of the petition. The reply states that the purchasing party argued "to discount the Fair Value of a $19.4 million company down to only $3.2 million." If that is correct, then it would appear the purchasing party was arguing the value of the moving parties' shares, which is 40.25 percent of the total company stock, would be somewhere around $1.29 million. Now, Robert Veyna tells us in his declaration in support of the supersedeas petition that "[w]e always anticipated that the amount to buy out the minority shares would be approximately $3 million." It is therefore a little unclear what the purchasing party asserts is the fair value of the minority shares.

"5. Upon receipt of payment in full, plaintiffs shall transfer the Shares to [the purchasing party].

"6. [The corporation] is hereby ORDERED liquidated, wound up and dissolved if payment in the full is not timely received by plaintiffs' counsel. In such event, 1) judgment shall be entered against [the corporation] and its sureties for all expenses and attorneys' fees incurred by plaintiffs in connection with [the purchasing party's] election on June 26, 2007 to purchase the Shares pursuant to Corporations Code § 2000, according to proof; and 2) the parties shall attend a case management conference before this Court on December 19, 2008, at 2 p.m., to discuss issues related to liquidation, including the possible appointment of a receiver to assume control of [the corporation] and supervise the liquidation process."

The purchasing party filed a timely notice of appeal. According to the supersedeas petition, the appeal will raise substantial questions concerning the issues the appraisers left to the trial court to resolve and the trial court's award of $343,453 in prejudgment interest. The purchasing party asserts that if its appeal is successful the fair value of the moving parties' shares "would be approximately $3 million," a reduction of more than $2 million from the shares' fair value as determined by the trial court in the decree.

## II

The purchasing party filed a petition for writ of supersedeas because a dispute has arisen between the purchasing party and the moving parties over the effect of the notice of appeal on the trial court's decree. It claims the filing of a notice of appeal automatically stays the decree and, more specifically, any requirement that it tender the funds to purchase the shares by December 15. Supersedeas is appropriate, it insists, because the moving parties and the trial court threaten not to honor the stay. The moving parties counter that the alternate decree is not automatically stayed and demand that the purchasing party post an undertaking in an amount equal to 150 percent of the fair value of the shares, an amount it would be required to post to stay enforcement of a civil money judgment. Both are incorrect.

■ The parties acknowledge that the statutory buyout procedure set out in Corporations Code section 2000 is a "special proceeding." (*Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 66 [120 Cal.Rptr.2d 814]; *Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 247 [170 Cal.Rptr. 656].) ■ This is important because the rules governing the application of stays and undertakings on appeal in a civil "action" (Code Civ.

Proc., § 22) do not apply in a "special proceeding" (Code Civ. Proc., § 23). (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707 [238 Cal.Rptr. 780, 739 P.2d 140].) In an action, the rules are delimited in part 2 of the Code of Civil Procedure, beginning with Code of Civil Procedure section 916. But "Part 2 of the Code of Civil Procedure extends generally only to civil 'actions,' and not to 'special proceedings.' Unless the statutes establishing a 'special proceeding' expressly incorporate the appellate-stay provisions of Part 2, they are inapplicable, and a final order in the 'special proceeding' is not automatically stayed pending appeal. [Citation.]" (*Agricultural Labor Relations Bd.*, at p. 707.) Nothing in Corporations Code section 2000 expressly incorporates part 2 of the Code of Civil Procedure, a point the purchasing party concedes. Thus, the trial court decree is not automatically stayed. Similarly, the purchasing party cannot be required to post an undertaking under the provisions of part 2 as though it were securing a civil judgment.

The purchasing party directs our attention, however, to Corporations Code section 2000, subdivision (d). That subdivision provides: "If the purchasing parties desire to prevent the winding up and dissolution, they shall pay to the moving parties the value of their shares ascertained and decreed within the time specified pursuant to this section, or, in case of an appeal, as fixed on appeal. On receiving such payment or the tender thereof, the moving parties shall transfer their shares to the purchasing parties." The purchasing party asserts that the phrase "or, in case of an appeal, as fixed on appeal" shows a legislative intent that the date by which a purchasing party may tender the money to buy out the minority shares is extended by law until the reviewing court issues a judgment determining the fair value of the shares and when payment must be made.

It is unclear how Corporations Code section 2000, subdivision (d) purports to address the narrow question of whether an automatic stay comes into effect upon the perfecting of an appeal. If the argument is that this subdivision impliedly incorporates part 2 of the Code of Civil Procedure, we are not persuaded. The rule is clear: there is no automatic stay unless the statute establishing the special proceeding *expressly* incorporates part 2. (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc., supra*, 43 Cal.3d at p. 707.) The Legislature knows how to draft language to incorporate one statute into another. (See *Carpenter v. Pacific Mut. L. Ins. Co.* (1939) 13 Cal.2d 306, 311–312 [89 P.2d 637] ["The legislature has seen fit to make the provisions of part II of the code expressly applicable to many special proceedings. Its failure to do so in reference to proceedings under the Insurance Code must be held to have been intentional."].) No reading of subdivision (d) could reasonably conclude it incorporates part 2 of the

Code of Civil Procedure, expressly or impliedly, into this statutory buyout procedure.

If the purchasing party is arguing that subdivision (d) of section 2000 of the Corporations Code writes an "automatic stay provision" into the statutory framework of the buyout proceedings, we are less persuaded. The argument fails to explain, for example, why the Legislature did not expressly incorporate part 2 of the Code of Civil Procedure into Corporations Code section 2000 if that were its intent. The Legislature is not limited to one way of drafting legislation. It may, as it deems appropriate, use other language and approaches to achieve similar purposes. That said, Supreme Court authority teaches there is no automatic stay in a special proceeding unless the statute expressly incorporates the provisions of part 2 of the Code of Civil Procedure. Because part 2 is not incorporated in Corporations Code section 2000, it would seem irregular to hold that subdivision (d) of that section, which does not even mention a stay, writes in an automatic stay in every case.

■ There is another reason why there is no automatic stay here. The parties acknowledge the decree is self-executing: It orders that if the purchasing party does not purchase the shares by the date described in the alternate decree the corporation is, without further action by the superior court, ordered wound up and dissolved. The rule has always been that "[i]f the judgment is self-executing and requires no process for enforcement, there is no statutory stay . . . , and, as a general rule, supersede[a]s is equally inappropriate. [Citations.]" (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 301, p. 340, citation omitted.) ■ Although a writ of supersedeas may issue when the purchasing party tenders the purchase price in accordance with the terms of the alternate decree (see *Esparza v. Kadam, Inc.* (1959) 170 Cal.App.2d 303, 306 [338 P.2d 492] [supersedeas issued where purchasing party deposited full buyout price with court under Corp. Code, former § 4658, the predecessor to Corp. Code, § 2000]), nothing in subdivision (d) of Corporations Code section 2000 can override the basic rule that there is no automatic stay of a self-executing order. Indeed, subdivision (d) simply acknowledges the reviewing court has the power to fix the fair value of the shares and, when necessary, to set a new payment date.

■ Even though a decree issued under the directives of Corporations Code section 2000 is not statutorily stayed, it is settled that a reviewing court has discretion to issue supersedeas if a proper and sufficient showing is made. (*People ex rel. S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 536 [72 Cal.Rptr. 790, 446 P.2d 790].) Courts will grant supersedeas in aid of their appellate jurisdiction "where to deny a stay would deprive the appellant of the benefit of a reversal of the judgment against him, provided, of course,

that a proper showing is made." (*Deepwell Homeowners' Protective Assn. v. City Council* (1965) 239 Cal.App.2d 63, 65–66 [48 Cal.Rptr. 321].)

An application for a stay of a judgment should, wherever possible, be made first in the superior court. (*Nuckolls v. Bank of California, Nat. Assn.* (1936) 7 Cal.2d 574, 577 [61 P.2d 927].) The reason is self-evident but it bears repeating. "A trial court's familiarity with the evolving circumstances of a case normally constitutes it the appropriate forum to weigh the relative hardships on the parties, including the likelihood that substantial questions will be raised on appeal, and its refusal to grant or to continue an injunction during appeal is entitled to great weight." (*People ex rel. S. F. Bay etc. Com. v. Town of Emeryville, supra*, 69 Cal.2d at p. 537.) The purchasing party argues it did not make an application in the court below because it believed there was an automatic statutory stay in effect. It suggests, however, that if there is no automatic stay then this court should remand the matter to the superior court in order that the purchasing party might pursue relief below.

To a large extent, the situation in which the purchasing party finds itself is one of its own making. The general rules applicable to special proceedings and self-executing judgments are long established. The purchasing party was clearly aware of them because it relied on the cases that announced and applied these rules in its petition for writ of supersedeas, albeit for different propositions. The suggestion, moreover, that it believed it did not have any remedies below is belied by the record. When the court entered its August 10, 2007, order staying the winding up and dissolution of the corporation, it specifically provided that the payment for the shares, to be held in a trust account, had to be made within 30 days "or such later time as may hereafter be ordered by the Court upon 'good cause' shown by written application." The purchasing party could have at any time applied to the trial court for relief. It had to make a written showing of good cause, but that is not substantially different from the showing it would be required to make in the reviewing court for the same relief.

Even so, the purchasing party has shown in the supersedeas petition and in oral argument on the petition the appeal will raise a substantial question. (*Deepwell Homeowners' Protective Assn. v. City Council, supra*, 239 Cal.App.2d at p. 67 [appellant must show appeal raises "substantial question."].) Because the alternate decree is self-executing, the superior court may but is not required to issue a stay of the windup and dissolution of the corporation if a proper showing is made and appropriate security posted. (*Abrams v. Abrams-Rubaloff & Associates, Inc., supra*, 114 Cal.App.3d at p. 251; see also *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th

455, 481 [81 Cal.Rptr.3d 72].) Thus, the purchasing party may make written application for relief to the trial court, or the parties may enter into a court-approved stipulation, regarding the manner and time within which the purchasing party must post the money, security, or combination thereof, to guarantee the purchase of the shares.

■ We emphasize that our refusal to issue a writ of supersedeas does not reflect this court's view of the merits of the appeal. We merely hold that under Corporations Code section 2000 the purchasing party must tender the fair value of the shares in accordance with the terms of the alternate decree even if an appeal is perfected in order to avoid dissolution of the corporation. And we decline to exercise our discretion to issue supersedeas solely on the narrow ground that the purchasing party should have sought relief in the superior court first.

### III

The petition for writ of supersedeas is denied. The temporary stay previously issued by this court is dissolved forthwith.

Even though the temporary stay issued at the purchasing party's request, it prevented the purchasing party from tendering payment of the fair value of the shares within the time allowed by the trial court's decree. On the court's own motion, therefore, the due date for tender of the payment for the shares is extended to 4:00 p.m. on January 22, 2009.

At oral argument, the parties were advised the court was considering imposition of an abbreviated briefing schedule. The record on appeal having been filed, on the court's own motion the following briefing schedule is imposed: Appellants' opening brief shall be filed no later than 15 days from the filing of this opinion; respondents' opening brief shall be filed no later than 15 days thereafter; and appellants' reply brief, if any, shall be filed no later than 10 days after the filing of respondents' opening brief. In order to meet this schedule, the parties are ordered to personally serve all briefs. The parties are further advised that the filing dates are firm and will not be extended even on stipulation of the parties, and this court will not consider any request for an extension of time to file any brief absent a showing of extraordinary good cause. California Rules of Court, rule 8.220 shall not apply to this appeal. Any request for oral argument must be filed no later than 10 days after respondents' brief is filed. If oral argument is requested, the matter will be set on the next available calendar at a date and time to be noticed.

Costs for this proceeding shall be awarded as part of the judgment on appeal. The denial of the petition for writ of supersedeas is final forthwith. (Cal. Rules of Court, rule 8.264(b)(2)(A).)

Appellants' petition for review by the Supreme Court was denied January 22, 2009, S169820.