Filed 9/18/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GUADALUPE A. ONTIVEROS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENT C. CONSTABLE et al.,<br><br>    Defendants and Appellants. | D072437<br><br><br><br>(Super. Ct. No. ECU07414) |

APPEAL from a judgment of the Superior Court of Imperial County, William D. Quan, Judge.  Reversed; remanded with directions.

Moskowitz Law Group and Karen Moskowitz; Law Offices of Thomas M. Regele and Thomas M. Regele for Defendant and Appellant Kent C. Constable.

A. Daniel Bacalski, Jr. for Defendant and Appellant Omega Electric, Inc.

Law Office of Charles L. Murray III and Charles L. Murray III for Plaintiff and Respondent.

Guadalupe Ontiveros, as the minority shareholder in Omega Electric, Inc. (Omega), sued majority shareholder Kent Constable, his wife (Karen Constable), and

Omega,[1] asserting direct and derivative claims arising from a dispute over management of Omega and its assets. In response to Ontiveros's claim of involuntary dissolution of Omega, Appellants filed a motion to stay proceedings and appoint appraisers to fix the value of Ontiveros's stock under Corporations Code[2] section 2000. The superior court granted the motion, staying the action. Ontiveros then tried to dismiss his claim for involuntary dissolution without prejudice, but the court clerk would not accept his filing because the matter had been stayed. Ontiveros thus filed a motion, asking the court to revoke its order granting Appellants' motion, or in the alternative, to reconsider and then vacate the order. The court treated that motion as a motion for leave to file a dismissal with prejudice under Code of Civil Procedure section 581, subdivision (e). The court granted the motion and allowed Ontiveros to dismiss his cause of action for involuntary dissolution of Omega. Without the existence of that claim, the court found no basis on which to stay the action and order an appraisal of the stock under section 2000. As such, the court lifted the stay, terminating the procedure under section 2000.

Appellants appeal the court's order, contending the court abused its discretion in granting Ontiveros's motion. In addition, Appellants maintain the trial court improperly interpreted section 2000 in granting the motion. Ontiveros counters that the court's order

---

[1]    Karen Constable is not a party to this appeal. To avoid confusion, we will use Kent to refer to Kent Constable and Karen to refer to Karen Constable. Because Karen is not a party to this appeal, we refer to Omega and Kent as Appellants. We refer to Kent, Karen, and Omega collectively as Defendants.

[2]    Statutory references are to the Corporations Code unless otherwise specified.

2

is not appealable. In the alternative, Ontiveros insists that if we find an appealable issue exists, the court did not abuse its discretion.

We agree with Appellants that they have presented an appealable issue. In addition, we are persuaded that the trial court abused its discretion here. In reaching this conclusion, we determine that the special proceeding under section 2000, once initiated, "supplants" the cause of action for involuntary dissolution. (See *Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 530 (*Go*).) At that point, the parties give up their right to litigate the involuntary dissolution action subject to the special proceeding outlined in section 2000. As such, a plaintiff, like Ontiveros, can no longer dismiss the involuntary dissolution claim under Code of Civil Procedure section 581, subdivision (e). As the superior court relied upon that code section as a mechanism to lift the stay and terminate the section 2000 special proceeding, it misapplied the law, and therefore, abused its discretion. (See *Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1334 ["It is an abuse of discretion for a trial court to misinterpret or misapply the law."].) Consequently, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2012, Ontiveros filed his initial complaint containing seven causes of action, including involuntary dissolution. Ontiveros's operative complaint is the second amended complaint, which he filed on May 31, 2013. It added several causes of action, but the claim for involuntary dissolution remained. Appellants filed a cross-complaint and subsequently amended it on March 4, 2014. Both operative pleadings allege extensive misconduct by the parties that is not directly pertinent to the

3

issues presented here. As such, we need not discuss the parties' mutual allegations in detail.

The parties have litigated the matter spanning several years, including engaging in discovery and bringing discovery motions. On April 17, 2014, Ontiveros moved to disqualify Defendants' counsel. Defendants' appealed the court's order granting Ontiveros's motion, and this court affirmed in part and reversed in part the order. (See *Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 702.) The remittitur was issued on April 19, 2016.

Almost seven months later, Appellants moved to stay proceedings and appoint appraisers to fix the value of Ontiveros's shares under section 2000. This procedure would allow Omega to avoid dissolution by having Kent purchase Ontiveros's stock in Omega. (See § 2000, subd. (a).) Appellants asserted that the court should order the procedure under section 2000 because Kent owned more than 50 percent of Omega's stock, Ontiveros was a minority shareholder, and Ontiveros had sued to involuntarily dissolve Omega.

Ontiveros opposed the motion, arguing that the motion was premature, the derivative portions of the lawsuit needed to be litigated first, Appellants were attempting to exclude valuation of certain "illegally obtained fees," and an alternative date for valuation must be set.

After multiple continuances of the hearing date, on March 2, 2017, the court granted Appellants' motion, staying the proceedings pending determination of the fair value of Omega pursuant to the procedure set forth in section 2000. The court required

4

Kent, within seven days of the date of the order, to deposit with the court a bond of $75,000 to secure payment of the reasonable expenses of Ontiveros if Ontiveros's shares were not purchased within the required time provided in section 2000. Within seven days of the posting of the bond, the court required Ontiveros, on the one hand, and Kent and Omega, on the other, to nominate in writing one proposed appraiser to serve on the appraiser panel per section 2000. Those two appraisers were then to select a third appraiser within 14 days of their selection.

Four days after the order was entered, Ontiveros attempted to file a request for dismissal, without prejudice, of his cause of action for involuntary dissolution in the second amended complaint. The court clerk did not enter dismissal of the involuntary dissolution cause of action because the March 2, 2017 order stayed the proceeding.

Ontiveros then filed a motion to vacate or reconsider the March 2, 2017 order, which was calendared to be heard on April 6, 2017. Because of the time frame set forth in the March 2 order, Ontiveros applied ex parte, on March 9, 2017, to vacate the March 2, 2017 order, or in the alternative, stay that order to allow a motion for reconsideration to be heard.[3]

The court denied Ontiveros's ex parte application. The court also continued the hearing on Ontiveros's motion to April 14, 2017 and ordered supplemental briefing. In addition, the court stayed the March 2, 2017 order until April 14, 2017, such that Kent was not required to deposit a bond with the court, and the parties were not required to select appraisers by the order's timetable.

---

[3] On March 9, 2017, Appellants served notice of entry of the March 2, 2017 order.

The court continued the April 14 hearing date to April 28, 2017. On April 28, after considering the moving papers, opposition, and reply as well as entertaining oral argument, the court, treating Ontiveros's motion as a motion for leave to file a dismissal with prejudice, granted the motion.[4] The court found that the initiation of the section 2000 procedure was akin to commencement of trial, and "for all intents and purposes the involuntary dissolution cause of action was over" upon granting Appellants' motion on March 2, 2017. However, the court determined that Ontiveros retained "an absolute right to dismiss the involuntary dissolution cause of action" with prejudice under Code of Civil Procedure section 581, subdivision (e). The court acknowledged that the court clerk declined to enter the request for dismissal on March 6, 2017 based on the stay under the March 2, 2017 order. However, because of Ontiveros's "absolute right to dismiss" the involuntary dissolution cause of action "at any time, even after the commencement of trial," the court considered the request for dismissal effective as of March 6, 2017. The court further made clear that the dismissal was with prejudice "as acknowledged by [Ontiveros] on the record at the hearing[.]" With the dismissal, there no longer existed a cause of action for involuntary dissolution; thus, the court found that the procedure under section 2000 was rendered inapplicable. Accordingly, by way of a written order dated May 10, 2017, the court vacated the March 2, 2017 order and terminated the proceeding under section 2000.

_____

4 Although the court treated Ontiveros's motion as a motion for leave to file a dismissal with prejudice, the court explained: "[E]ven if the court considered this a Motion for Reconsideration under [Code of Civil Procedure] section 1008, it would find as a new fact [Ontiveros's] attempt on March 6, 2017 to file and have entered the Request for Dismissal."

6

Appellants timely appealed. We asked the parties to submit letters addressing whether the appeal should be dismissed because it was taken from a nonappealable order. The parties filed the requested letters. We determined that the appeal could proceed, but suggested that the parties further address the issue in their respective appellate briefs and informed them that we would further consider the appealability issue.

After hearing oral argument, we requested supplemental briefing addressing the merits of Appellants' challenge to the superior court's order. The parties submitted the requested supplemental briefing.

DISCUSSION

I

*APPEALABILITY*

A section 2000 shareholder buyout is a special proceeding that supplants an action for involuntary dissolution of a corporation. (*Go, supra,* 179 Cal.App.4th at pp. 530, 532.) Section 2000 provides that when a shareholder sues for involuntary dissolution, the corporation, or the holders of 50 percent or more of the voting power of the corporation, may avoid the dissolution by purchasing for cash the shares owned by plaintiffs at their "fair value." (§ 2000, subd. (a).) The statute defines "fair value" as the "liquidation value as of the valuation date but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation." (*Ibid*.) If the parties cannot agree on a valuation, the trial court shall appoint three disinterested appraisers to appraise the fair value of the shares. (§ 2000, subd. (c).) "The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a

7

majority of them, when confirmed by the [superior] court, shall be final and conclusive upon all parties." (*Ibid*.)

Below, the court originally granted Appellants' motion under section 2000 in the March 2, 2017 order. However, after the court allowed Ontiveros to dismiss his cause of action for involuntary dissolution of Omega, the court found the procedure ordered under section 2000 to be inapplicable. It then vacated the March 2 order. Accordingly, the court ultimately denied Appellants' motion under section 2000. The threshold issue before us is whether such a denial is appealable.

Section 2000, subdivision (c) addresses appealability. At the time of Appellants' motion, that subdivision provided:

> "The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining such value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a majority of them, when confirmed by the court shall be final, and conclusive upon all parties. The court shall enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree. If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties. Any shareholder aggrieved by the action of the court may appeal therefrom."[5] (§ 2000, subd. (c).)

_____

[5] On January 1, 2018, the last sentence of section 2000, subdivision (c) was modified in that the word "therefrom" was amended to state "the court's decision." Thus, the last sentence now reads, "Any shareholder aggrieved by the action of the court may appeal the court's decision." (Stats. 2017, ch. 721, § 1.) Appellants argue this change makes clear that the Legislature intended to provide any aggrieved shareholder the "immediate right of appeal." Ontiveros does not respond to this argument.

8

Ontiveros asserts the plain language of section 2000, subdivision (c) only allows a party to appeal after a trial court issues an "alternative decree" for winding up and dissolution of the corporation. In other words, an aggrieved shareholder may only appeal after the conclusion of the section 2000 procedure when the court enters its decree providing, in the alternative for winding up and dissolution of the company, a time by which the majority shareholder(s) must purchase the minority shareholder's stock at a certain price. In contrast, Appellants assert a party may appeal an order denying a motion under section 2000 because it is aggrieved by the action of the court.

Although the parties essentially concede that there is no authority directly addressing the appealability issue before us here, Ontiveros urges this court to follow *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469 (*Dickson*). *Dickson* involved a motion under the former section 17351 for buyout of another member's interest in a limited liability company.[6] (*Dickson, supra,* at p. 473.) The trial court issued an alternative decree and the purchasing member made prompt payment per the decree, and the court entered judgment accordingly. The moving member appealed from the judgment, contending the trial court erred in valuing his interest in the company. (*Id*. at p. 473.) The purchasing member moved to dismiss the appeal on the ground that the notice of appeal was not timely filed after entry of the alternative decree. The appellate court

---

[6] Former section 17351 provided a buyout procedure for limited liability companies that was like the one set forth in section 2000. In 2014, section 17531 was repealed and replaced by section 17707.03. (Stats. 2012, ch. 419, § 19, operative Jan. 1, 2014.)

agreed, holding that the appeal should have been taken from the alternative decree and dismissed the appeal. (*Ibid*.)

The court in *Dickson*, *supra*, 164 Cal.App.4th 469 did not address whether a party can appeal from an order denying a motion to buyout shares. Thus, that case offers little guidance here. If anything, the court's holding in *Dickson* suggests that a party aggrieved by a ruling on a request for buyout must appeal that ruling rather than a subsequent judgment. (*Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 627 (*Panakosta*).)

Appellants maintain *Panakosta*, *supra*, 199 Cal.App.4th 612 is instructive.[7] In that case, partners in a limited partnership disagreed about selling certain real property and some of the limited partners (minority partners) sought to wrest control of other partners who collectively held a majority interest in the partnership (majority partners). The majority partners filed an action seeking, among other causes of action, a judicial dissolution of the partnership. The minority partners then sought to avoid dissolution and petitioned to buy out the majority partners' share of the business in a special proceeding under section 15908.02.[8] In response to the petition, the majority partners dismissed

---

[7]    Ontiveros cites *Panakosta*, *supra*, 199 Cal.App.4th 612 for its explanation of the rules of statutory interpretation and its holding that a dismissal of an involuntary dissolution matter with prejudice removes the remedy provided by section 2000. However, Ontiveros does not address that the court in *Panakosta* also found an order denying a buyout petition under section 15908.02 (dealing with partnerships) was immediately appealable.

[8]    Section 15908.02 provides an appraisal and buyout procedure for limited partnerships that is similar to the shareholder appraisal and buyout procedure for corporations set forth in section 2000.

10

their judicial dissolution action and filed an anti-SLAPP motion under Code of Civil Procedure section 425.16.  The superior court granted the anti-SLAPP motion and denied the minority partners' petition for buyout.  The minority partners appealed.  (*Panakosta*, *supra*, 199 Cal.App.4th at pp. 618-619.)

Among other issues, the appellate court addressed whether the minority partners could appeal from a denial of a motion to buy out the majority partners' interests under section 15908.02.  In answering that question in the affirmative, the court observed that subdivision (d) of section 15908.02 provides that " '[a]ny member aggrieved by the action of the court may appeal therefrom.' "[9]  (*Panakosta*, *supra*, 199 Cal.App.4th at p. 625.) The court then reasoned that the minority partners were "aggrieved by the trial court's denial of the motion to buy out the majority partners' interests under section 15908.02.  A party who has an interest recognized by law and who is adversely affected by the judgment or order is an aggrieved party.  [Citation.]  [The minority partners'] interest in vindicating [their] statutory right to buy out [the majority partners] was 'immediate, pecuniary, and substantial, and not merely a nominal or remote consequence' of the trial court's ruling.  [Citation.]  Thus, subdivision (d) of section 15908.02 authorized an appeal from the court's denial of [the minority partners'] petition."  (*Panakosta*, *supra*, at p. 625.)

---

[9]    The court also noted that section 15908.02, subdivision (d) appeared to contain a drafting error because it referred to "member" when limited partnerships only have partners.  Despite this error, the court determined "subdivision (d) nonetheless expressly confers a statutory right to appeal from an action of the court on a request for buyout of interests by partners who seek judicial dissolution of a partnership."  (*Panakosta*, *supra*, 199 Cal.App.4th at p. 625.)

11

We find *Panakosta* helpful here. The language addressing appeals in subdivision (d) of section 15908.02 is almost identical to the language in section 2000, subdivision (c). Like the minority partners in *Panakosta*, *supra*, 199 Cal.App.4th 612, Kent was aggrieved by the superior court's May 10, 2017 order, which vacated the March 2, 2017 order beginning the appraisal and buyout procedure under section 2000. Kent's interest in vindicating his statutory right to purchase Ontiveros's shares in Omega was "immediate, pecuniary, and substantial, and not merely a nominal or remote consequence" of the superior court's ruling. (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 58; *Panakosta*, *supra*, at p. 625.) Alternatively stated, Kent had a right to purchase Ontiveros's shares under the procedure set forth in section 2000, which the court acknowledged in its March 2, 2017 order. The court subsequently denied Kent that right after allowing Ontiveros to dismiss his involuntary dissolution cause of action. At that point, Kent was aggrieved by the "action of the court" and, under subdivision (c) of section 2000, had the right to appeal the corresponding order. (Compare § 2000, subd. (c) with § 15908.02, subd. (d); cf. *Panakosta*, *supra*, at p. 625.)

In short, the court's denial of Appellants' motion for an appraisal and buyout under section 2000 is appealable, and we proceed to consider Appellants' challenge to the superior court's order.

12

*THE DENIAL OF THE MOTION TO INVOKE THE*
*SECTION 2000 SPECIAL PROCEEDING*

As we discuss above, the superior court's May 10, 2017 order had the effect of denying Appellants' motion for appraisal and buyout under section 2000. That motion was based on the rights afforded by subdivision (a) of section 2000.[10]

Subdivision (c) of section 2000 expressly provides that the right to purchase the shares of a plaintiff is an alternative to an involuntary dissolution of a corporation. Put differently, section 2000, subdivision (c) applies to any suit seeking involuntary dissolution. "Under those circumstances, the purchasing shareholders 'may avoid the dissolution of the corporation and the appointment of any receiver' by buying the plaintiff's shares. Nothing in section 2000, subdivision (a) provides for a buyout independent of a pending involuntary dissolution suit." (*Kennedy v. Kennedy* (2015) 235

---

[10]     Section 2000, subdivision (a) provides: "Subject to any contrary provision in the articles, which may include a reference to a separate written agreement between two or more shareholders pertaining to the purchase of shares: [¶] In any suit for involuntary dissolution, or in any proceeding for voluntary dissolution initiated by the vote of shareholders representing only 50 percent of the voting power, the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding (the 'moving parties') at their fair value. [¶] The fair value shall be determined on the basis of the liquidation value as of the valuation date but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation. In fixing the value, the amount of any damages resulting if the initiation of the dissolution is a breach by any moving party or parties of an agreement with the purchasing party or parties may be deducted from the amount payable to the moving party or parties, unless the ground for dissolution is that specified in paragraph (4) of subdivision (b) of Section 1800. The election of the corporation to purchase may be made by the approval of the outstanding shares (Section 152) excluding shares held by the moving parties."

Cal.App.4th 1474, 1481 (*Kennedy*).)  In short, a party's right under section 2000 depends entirely on the existence of a cause of action for involuntary dissolution of a corporation. Without such a cause of action, a party could not bring a motion pursuant to section 2000.

However, the initial allegation of a cause of action for involuntary dissolution in a complaint does not make the granting of a motion under section 2000 automatic.  For example, in *Kennedy*, *supra*, 235 Cal.App.4th 1474, the plaintiff sued the defendants for, inter alia, involuntary dissolution.  (*Id*. at p. 1478.)  To avoid dissolution, the defendants moved for an appraisal and buyout under section 2000.  (*Kennedy*, *supra*, at p. 1479.) Before the hearing on that motion, the plaintiff dismissed with prejudice his claim for involuntary dissolution.  (*Ibid*.)  The superior court denied the section 2000 motion, finding it lacked jurisdiction because of the dismissal of the involuntary dissolution cause of action.  (*Kennedy*, *supra*, at pp. 1479-1480.)

The Court of Appeal affirmed the order denying the motion.  The court observed that a plaintiff generally has an unfettered right to dismiss a cause of action before the commencement of trial.  (*Kennedy*, *supra*, 235 Cal.App.4th at p. 1481; see Code Civ. Proc., § 581, subd. (c).[11])  The appellate court agreed with the superior court that, without the existence of a cause of action for involuntary dissolution, a motion under section 2000 must be denied.  (*Kennedy*, *supra*, at p. 1483.)

---

[11]  Subdivision (c) of Code of Civil Procedure section 581 provides:  "A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."

Thus, *Kennedy*, *supra*, 235 Cal.App.4th 1474 stands for the proposition that a plaintiff can dismiss an involuntary dissolution cause of action *before* a hearing on a motion for appraisal and buyout under section 2000, and the court can properly deny that motion because the prerequisite triggering section 2000 no longer exists. However, in the instant matter, Ontiveros did not dismiss his claim for involuntary dissolution until after the superior court granted Appellants' motion under section 2000. According to Appellants, because of the timing of the dismissal, the superior court lacked authority to vacate its March 2, 2017 order staying the litigation to proceed with the special proceeding under section 2000. Alternatively stated, Appellants maintain that once a superior court grants a section 2000 motion, it cannot stop the special proceeding under the statute, even if the plaintiff dismisses its cause of action for involuntary dissolution with prejudice.[12]

Appellants claim that section 2000 does not give the party seeking involuntary dissolution of a corporation the right to avoid the statutory election to purchase after the election process has been commenced by order of the court. Specifically, Appellants insist that section 2000, subdivision (a) "mandate[s] that once the right to purchase has been ordered in a pending lawsuit for dissolution, the court must stay the dissolution action and order the appraisal, and thereafter must issue an alternative decree for purchase in cash at the appraised value or actual dissolution of the company if not

---

[12]  In the respondent's brief, Ontiveros asserts multiple times that courts "have consistently held for over 50 years that these Appellants have no right to force a buyout of Respondent's interest." None of the cases cited by Ontiveros, however, address the issue presented here, where a plaintiff dismisses an involuntary dissolution cause of action after a court grants a motion to proceed under section 2000.

15

purchased."  In support of their position, Appellants focus not on section 2000, but on section 17707.03, subdivision (c)(6).

Section 17707.03 applies to limited liability companies.  Section 17707.03, subdivision (a) allows for the dissolution of a limited liability company under certain circumstances.  Those circumstances are specified in 17707.03, subdivision (b).  Section 17707.03, subdivision (c)(1) through (5) describes how the buyout procedure is conducted.  Subdivision (c)(6) of section 17707.03 states:  "A dismissal of any suit for judicial dissolution by a manager, member, or members shall not affect the other members' rights to avoid dissolution pursuant to this section."

Appellants claim section 17707.03, subdivision (c)(6) prevents Ontiveros from dismissing his involuntary dissolution cause of action to avoid the appraisal and buyout procedures under section 2000.  However, as a threshold matter, we observe that section 17707.03 applies to limited liability companies, not corporations like Omega.  And there is no analogous provision in section 2000 comparable to section 17707.03, subdivision (c)(6).  Appellants, undaunted by this distinction, urge us to apply section 17707.03, subdivision (c)(6) here because section 2000 and section 17707.03 are "functionally identical"; thus, the legislative intent as to section 17707.03 applies to section 2000.  In other words, although section 2000 does not contain any provision analogous to subdivision (c)(6) of section 17707.03, Appellants contend we must read that subdivision into section 2000 based on legislative intent.  We decline to do so.

Section 17707.03 and section 2000 are not "functionally identical" as Appellants claim.  The former applies to limited liability companies while the latter affects

16

corporations. And limited liability companies are not corporations. " ' "A limited liability company is a hybrid business entity formed under the Corporations Code . . . [which] provides members with limited liability to the same extent enjoyed by corporate shareholders [citation] . . . . " ' [Citation] while maintaining the attributes of a partnership for federal income tax purposes." (*People v. Pacific Landmark* (2005) 129 Cal.App.4th 1203, 1211-1212.) It consists of at least two members who own membership interests. Although the company has a separate legal existence from its members, the members actively participate in the management and control of the company. (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963.)

The Legislature crafted a statute to govern a buyout procedure when one member sues the other members to dissolve a limited liability company.[13] (§ 17707.03.) Also, the Legislature wrote a different statute to govern a buyout procedure when a shareholder sues the other shareholders to dissolve a corporation. (§ 2000.) Section 17707.03, including subdivision (c)(6) was added to the Corporations Code in 2012 and became effective January 1, 2014. (Stats. 2012, ch. 419, § 20.) Section 2000 was added to the Corporations Code in 1975 and became effective January 1, 1977. (Stats. 1975, ch. 682, § 7.) It was most recently amended in 2017, with the amendment effective January 1, 2018. (Stats. 2017, ch. 721, § 1.) The Legislature did not see fit to add to section 2000 a subdivision like section 17707.03, subdivision (c)(6) despite amending section 2000 as

---

[13]    The statute also allows a court to decree the dissolution of a limited liability company under certain circumstances in addition to a suit for judicial dissolution. (§ 17707.03, subds. (a), (b)(1)-(5).)

17

recently as 2017.[14]  Here, Appellants essentially ask us to add that subdivision to section 2000 although the Legislature did not do so.  This is not our role.  We do not usurp the Legislature's law making function by borrowing words from one statute and inserting those words into another statute.  Such an approach is especially true here where we need not harmonize conflicting statutes.  Section 17707.03 and section 2000 are not in disagreement.  Each statute governs a different legal entity.  There is no reason for us to apply both the statutes to a corporation when the Legislature has given us no indication that we should do so.[15]

Yet, our conclusion that section 17707.03 does not apply to a dissolution action involving a corporation is not the death knell for Appellants' contentions.  The question remains whether a plaintiff can dismiss its cause of action for involuntary dissolution after a special proceeding under section 2000 has commenced.  *Go, supra,* 179 Cal.App.4th 522 provides some guidance on this issue.

In *Go*, the plaintiff filed a complaint seeking the involuntary dissolution of a close corporation of which she was a shareholder.  The plaintiff also sought damages in her complaint based on claims of breach of fiduciary duty and fraud.  (*Go*, *supra*, 179 Cal.App.4th at p. 527.)  The defendants, who were the other shareholders of the

---

[14]    We note this amendment occurred after section 17707.03, subdivision (c)(6) was effective.

[15]    Ontiveros commenced the instant action on December 19, 2012.  Because section 17707.03 was not yet operative when the action commenced, its provisions, including subdivision (c)(6) do not apply to this matter.  (See *Kennedy*, *supra*, 235 Cal.App.4th at p. 1491.)  For this reason as well, we reject Appellants' argument based on section 17707.03, subdivision (c)(6).

18

corporation, filed a cross-complaint for breach of contract, misappropriation of corporate opportunities, and breach of duty of loyalty. The defendants subsequently sought to purchase the plaintiff's shares under section 2000 by moving for a stay of the dissolution proceedings and requesting that the value of the plaintiff's shares be fixed by the appraisal process set forth in section 2000. The superior court granted the stay of the dissolution proceedings, appointed the appraisers, and upon receiving the appraisers' reports, determined the value of the plaintiff's shares in the corporation. Pursuant to section 2000, the superior court then issued an alternative decree that the defendants pay the plaintiff for the value of her shares by a certain date, or, in the alternative, the involuntary winding up and dissolution " 'shall proceed immediately.' " (*Go*, *supra*, at p. 529.) The defendants, even though they had commenced the appraisal and buyout proceedings under section 2000, appealed from the alternative decree, claiming they still had a right to litigate or " 'defend themselves' " on the merits of the plaintiff's claim for involuntary dissolution. (*Go*, *supra*, at p. 529.)

The Court of Appeal rejected the defendants' contention, concluding that when the defendants obtained a stay of the dissolution proceedings and implemented the appraisal process of section 2000, they were agreeing to use that summary proceeding in lieu of litigating their claims in the involuntary dissolution action: "[T]hat is precisely the concession [the] defendants chose when they elected to proceed under section 2000." (*Go*, *supra*, 179 Cal.App.4th at p. 531.) As the Court of Appeal further explained: "[The defendants] could have chosen to litigate their cross-complaint and defend the . . . action for involuntary dissolution on its merits. They chose instead to use the summary

19

procedure afforded by section 2000, which resulted in a stay of the dissolution proceedings, valuation of the corporation, and an alternative decree to either pay the plaintiff the designated amount or have judgment of dissolution entered against them.  If this were not the inevitable outcome, then all majority shareholders facing an action for involuntary dissolution would invoke section 2000 if only for the purpose of delay, with nothing to lose other than the expense of the appraisal and attorney fees, knowing they could eventually litigate the action for involuntary dissolution on its merits.  The plain language of section 2000, and the apparent legislative purpose inherent in the language of the statute, do not permit such an interpretation." (*Go, supra,* at pp. 531-532.)  It was in this context that the Court of Appeal stated:  "The procedure permitted by section 2000, which is entirely optional, embodies a summary proceeding which *supplants* the action for involuntary dissolution pursuant to section 1800." (*Go, supra,* at p. 530, italics added.)

We note that there exist some factual differences between *Go* and the instant action.  In *Go,* after the defendants moved for the procedure under section 2000 and that procedure had run its course, they attempted to avoid the consequences of the stay, appraisal, and buyout by arguing they had the right to litigate the involuntary dissolution claim. (*Go*, *supra*, 179 Cal.App.4th at p. 529.)  In the instant action, the defendants are not seeking to avoid the section 2000 proceeding, but the plaintiff is.  Here, Ontiveros opposed Appellants' motion under section 2000 and attempted to dismiss his cause of action four days after the court stayed the action and ordered a special proceeding under

20

section 2000. Except having been ordered by the court, the special proceeding has not run its course like the special proceeding in *Go*.

Yet, even acknowledging these differences, we must address the appellate court's conclusion that section 2000's special proceeding "supplants" the action for involuntary dissolution. (*Go*, *supra*, 179 Cal.App.4th at p. 530.) Merriam-Webster's Collegiate Dictionary provides three definitions for the word "supplant:" (1) "to supersede (another) esp. by force or treachery"; (2) "to eradicate and supply a substitute for"; and (3) "to take the place of and serve as a substitute for esp. by reason of superior excellence or power[.]" (Webster's 11th Collegiate Dict. (2006) p. 1255.) The court's choice of the word "supplant" in describing the special proceeding under section 2000 indicates that the court determined that the plaintiff's cause of action for involuntary dissolution was replaced by the special proceeding. In other words, the involuntary dissolution claim ceased to exist and was superseded by the special proceeding. At that point, the plaintiff no longer controlled her cause of action and the defendants gave up their right to litigate the cause of action by electing to proceed with the special proceeding under section 2000. (See *Go*, *supra*, at pp. 531-532.)

Such a conclusion finds support in section 2000. A cause of action for involuntary dissolution of a corporation seeks to end the subject corporation's legal existence. (See § 1800.) In litigating that cause of action, the plaintiff would have to show that dissolution of the corporation was warranted while the defendant would fend off such a claim. Section 2000 allows the parties to avoid such litigation if the corporation or holders of 50 percent or more of the voting power of the corporation opt to purchase the

21

shares owed by the plaintiff at their "fair value." (§ 2000, subd. (a).) Subdivision (c) of section 2000 provides for a procedure to determine the fair value of the shares if the parties do not agree on a value. As such, section 2000 provides a mechanism to take the place of a cause of action for involuntary dissolution by allowing the parties to avoid litigating that claim and providing a means to establish the fair value of the corporation's shares. In this sense, the court's use of the word "supplants" is particularly apt. (See *Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1018 ["A section 2000 shareholder buyout is a special proceeding that supplants an action for involuntary dissolution of a corporation."].)

In our request for supplemental briefing, we asked the parties to address four questions in light of the appellate court's quote explaining that section 2000's special proceeding "supplants" the action for involuntary dissolution. (See *Go*, *supra*, 179 Cal.App.4th at p. 530.) In one question, we asked the parties whether Code of Civil Procedure section 581, subdivision (e) still applies after a section 2000 special proceeding commences. Not surprisingly, the parties provide different answers to this question. Appellants respond that it no longer applies. Ontiveros contends that it does. Appellants have the better argument.

Code of Civil Procedure section 581, subdivision (e) provides: "After the actual commencement of trial, the court shall dismiss the complaint, or any causes of action asserted in it, in its entirety or as to any defendants, with prejudice, if the plaintiff requests a dismissal, unless all affected parties to the trial consent to dismissal without prejudice or by order of the court dismissing the same without prejudice on a showing of

22

good cause." That subdivision does not mention a special proceeding. Instead, Code of Civil Procedure section 581, subdivision (a)(1) defines "[a]ction" as "any civil action or special proceeding." Subdivision (a)(2) of that same section provides that " '[c]omplaint' means a complaint and a cross-complaint." Thus, at most, Code of Civil Procedure section 581, subdivision (e) would allow a plaintiff to dismiss a complaint or a cause of action in that complaint with prejudice after the commencement of a trial.[16] But a special proceeding under section 2000 is not a trial.

In a trial of an involuntary dissolution claim, the parties would be adversaries with the plaintiff offering evidence showing that grounds exist warranting dissolution of the corporation and establishing the plaintiff's damages. The defendant, on the other hand, would offer evidence undercutting the plaintiff's claim that dissolution of the corporation is necessary. The parties would elicit testimony from witnesses and ask the fact finder to decide the dispute on the merits, defining the rights and obligations of the parties while determining liability and damages. In contrast, the special proceeding under section 2000 includes none of the attributes of a trial. There is no resolution of the disputes on the merits. The special proceeding does not determine whether the corporation should be dissolved, but instead, provides the plaintiff and defendant with a statutory remedy without trial. (See *Go*, *supra*, 179 Cal.App.4th at p. 532; *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477, 487, 489 [referring to section 2000 as a "buy-out

---

[16]     "A trial shall be deemed to actually commence at the beginning of the opening statement or argument of any party or his or her counsel, or if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence." (Code Civ. Proc., § 581, subd. (a)(6).)

statute" and as providing a "buy-out remedy"].)  A value of the corporation's stock is determined and then the defendant has a period by which it is to pay the plaintiff for its stock.  If the defendant does not do so, a judicial decree will dissolve the corporation. (See § 2000, subds. (c), (d).)  Consequently, we determine the court's order establishing a special procedure under section 2000 is not analogous to the commencement of trial. Thus, the fact that Code of Civil Procedure section 581, subdivision (e) allows a plaintiff to dismiss a complaint or a cause of action with prejudice after trial commences does not persuade us that that subdivision is applicable to a section 2000 special proceeding.

We also note that section 2000 does not expressly incorporate Code of Civil Procedure section 581.  (See *Veyna v. Orange County Nursery, Inc.* (2009) 170 Cal.App.4th 146, 155 (*Veyna*).)  In *Veyna*, the minority shareholder plaintiffs brought an action for involuntary dissolution of a corporation.  To avoid dissolution, the corporation elected to buy out the plaintiffs under section 2000.  (*Veyna*, *supra*, at p. 149.)  The trial court entered a decree fixing the fair value of the plaintiffs' shares and ordered that unless the corporation made payment for the shares by a particular date, judgment would be entered winding up and dissolving the corporation.  (*Id.* at pp. 149-150.)  Without making the required payment, the corporation filed a notice of appeal, asserting that the filing of the appeal automatically stayed the decree's requirement that payment be made for the shares.  (*Id.* at p. 150.)  Thereafter, the corporation petitioned the Court of Appeal for a writ of supersedeas to stay the decree pending the appeal.  (*Id.* at pp. 150, 154.)  The Court of Appeal gave two reasons for concluding that the automatic stay did not apply. First, as relevant here, the special procedure under section 2000 is a " 'special

24

proceeding' " to which section 916 does not apply. (*Veyna*, *supra*, at pp. 154-155.) To this end, the court explained: "But 'Part 2 of the Code of Civil Procedure extends generally only to civil "actions," and not to "special proceedings." Unless the statutes establishing a "special proceeding" expressly incorporate the appellate-stay provisions of Part 2, they are inapplicable, and a final order in the "special proceeding" is not automatically stayed pending appeal. [Citation.]' [Citation.] Nothing in Corporations Code section 2000 expressly incorporates Part 2 of the Code of Civil Procedure, a point the purchasing party concedes." (*Veyna*, *supra*, at p. 155, quoting *Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707.)[17]

Code of Civil Procedure section 581 is included in part 2 of the Code of Civil Procedure. As such, it does not apply to section 2000 because that section does not expressly incorporate it. (*Veyna*, *supra*, 170 Cal.App.4th at p. 155.) Expressed differently, once a court grants a motion under section 2000, a plaintiff no longer controls a cause of action for involuntary dissolution, and therefore, cannot dismiss it under Code of Civil Procedure section 581. At that point, the parties give up their rights to litigate that cause of action and will abide by the process set forth in section 2000. (Cf. *Go, supra*, 179 Cal.App.4th at pp. 530, 532.)

Our conclusion is not undermined by our holding in *Conservatorship of Martha P.* (2004) 117 Cal.App.4th 857. In that case, we determined that Code of Civil Procedure

---

17    The appellate court's second reason for concluding the automatic stay did not apply was that the trial court's decree was self-executing. (*Veyna*, *supra*, 170 Cal.App.4th at p. 156.)

section 581, subdivision (b) allowed the San Diego County Health and Human Service's Agency's Office of the Public Conservator to request dismissal of a petition to reestablish conservatorship of the appellant under the Lanterman-Petris-Short (LPS) Act.[18] (*Martha P.*, *supra*, at pp. 859-860.)  In reaching this conclusion, we explained that the LPS Act specifically incorporated Code of Civil Procedure part 2 via the Probate Code (*Martha P.*, *supra*, at pp. 867-868) and voluntary dismissal was consistent with the LPS Act's legislative goal of preventing the inappropriate, indefinite commitment of gravely disabled persons.  (*Martha P.*, *supra*, at p. 868).  In contrast, unlike the Probate Code, section 2000 does not expressly or implicitly incorporate Code of Civil Procedure section 581.

Having concluded that Code of Civil Procedure section 581, subdivision (e) does not allow a plaintiff to dismiss a cause of action for involuntary dissolution once a court grants a motion under section 2000, we next turn to whether the superior court abused its discretion in granting Ontiveros's motion for reconsideration and terminating the special proceeding under section 2000.  Below, the trial court concluded that Ontiveros, under Code of Civil Procedure section 581, subdivision (e), had the "absolute right to dismiss" with prejudice the involuntary dissolution cause of action "at any time, even after the commencement of trial."  With the cause of action for involuntary dissolution dismissed, the court concluded there was no reason to continue the special proceeding under section 2000.  Thus, the trial court's conclusion to terminate the special proceeding hinged on its determination that Ontiveros could dismiss the subject claim under Code of Civil

---

[18]    Welfare and Institutions Code section 5000 et seq.

Procedure section 581, subdivision (e). In doing so, the trial court abused its discretion by misapplying and misinterpreting the law. (See *Prigmore v. City of Redding*, *supra*, 211 Cal.App.4th at p. 1334.) Once the trial court stayed the action and ordered a special proceeding under section 2000, that special proceeding supplanted the involuntary dissolution cause of action. (See *Go*, *supra*, 179 Cal.App.4th at p. 530; *Goles v. Sawhney*, *supra*, 5 Cal.App.5th at p. 1018.) The order granting Ontiveros's motion must be reversed.

Although we establish that Code of Civil Procedure section 581, subdivision (e) does not allow a plaintiff to dismiss an involuntary dissolution cause of action with prejudice after a court orders the commencement of a special proceeding under section 2000, we do not suggest that a court does not have discretion to dismiss a special proceeding under any circumstance. For example, we can imagine a scenario where the parties settle the dispute rendering the purpose of the special proceeding moot. In addition, there may be other scenarios where justice or equity would support a court ending a special proceeding under section 2000. Such a situation might even present itself as a motion for reconsideration under Code of Civil Procedure section 1008. That said, a new fact under that statute cannot be the plaintiff dismissing a cause of action for involuntary dissolution after the court has granted a motion for a special proceeding under section 2000.

27

DISPOSITION

The order is reversed and the matter is remanded to the superior court with directions to reinstitute the special proceeding under section 2000.  Appellants are entitled to their costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

28