[Civ. No. 59129. Second Dist., Div. Two. Dec. 22, 1980.]

HARRY ABRAMS, Plaintiff and Appellant, v. ABRAMS-RUBALOFF & ASSOCIATES, INC., et al., Defendants and Appellants.

242

## COUNSEL

Maiden, Rosenbloom & Wintroub, David L. Wintroub, Alvin D. Rosenbloom and Miriam A. Tigerman for Plaintiff and Appellant.

Levy, Leipziger & Norminton, Levy & Norminton, Charles M. Levy, Peter C. Bronson and Steven G. Small for Defendants and Appellants.

## OPINION

**FLEMING, Acting P. J.**—Abrams-Rubaloff & Associates, Inc. (the corporation) and Noel K. Rubaloff (Rubaloff) appeal a decree of the trial court confirming the majority appraisal valuation of Harry Abrams' shares of the corporation's stock, directing Rubaloff and the corporation to file a written election specifying which one of them is to be the purchasing party, and ordering the wind up and dissolution of the corporation unless payment for Abrams' shares is timely made. (Corp. Code, § 2000.) Harry Abrams (Abrams) appeals the portions of the decree valuing his shares at $355,000 and denying him interest from the date of valuation.

### STATUTE

Corporations Code section 2000, effective January 1, 1977, provides in pertinent part: "(a)...[I]n any proceeding for voluntary dissolution initiated by the vote of shareholders representing only 50 percent of the voting power, the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned...by the shareholders so initiating the proceeding (the 'moving parties') at their fair value. The fair value shall be determined on the basis of the liquidation value but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation. In fixing the value, the amount of any damages resulting if the initiation

of the dissolution is a breach by any moving party...of an agreement with the purchasing party...may be deducted from the amount payable to such moving party....

"(b) If the purchasing parties (1) elect to purchase shares owned by the moving parties, and (2) are unable to agree with the moving parties upon the fair value of such shares, and (3) give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if such expenses are recoverable under subdivision (c), the court upon application of the purchasing parties, either in the pending action or in a proceeding initiated...by the purchasing parties in the case of a voluntary election to wind up and dissolve, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties.

"(c) The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining such value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or a majority of them, when confirmed by the court shall be final and conclusive upon all parties. The court shall enter a decree which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree. If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties....

"(d) If the purchasing parties desire to prevent the winding up and dissolution, they shall pay to the moving parties the value of their shares ascertained and decreed within the time specified pursuant to this section, or, in the case of an appeal, as fixed on appeal...."

## FACTS

Abrams-Rubaloff & Associates, Inc., formed in December 1964, acts as an artists' manager (agent) for actors, directors, writers, and producers. Harry Abrams and Noel Rubaloff each own 50 percent of the corporation's outstanding shares. On January 25, 1977, Abrams filed with the Secretary of State a certificate of election to wind up and dis-

solve the corporation (Corp. Code, § 1900, subd. (a)), and thereafter he filed a petition with the superior court to invoke its supervision of the wind up and dissolution. (Corp. Code, § 1904.) On February 22, 1977, Rubaloff and the corporation terminated Abrams' employment with the corporation and delivered to Abrams an "election" to avoid dissolution by purchasing his shares pursuant to the provisions of Corporations Code section 2000. The "election," however, did not specify whether Rubaloff or the corporation (hereinafter referred to collectively as Rubaloff) would be the actual purchaser.

On April 12, 1977, the superior court assumed jurisdiction over the wind up and dissolution of the corporation, stayed the dissolution proceedings, set the amount of bond, specified the procedure for the appointment of three appraisers, and directed the appraisers, or a majority of them, to "determine the time and manner in which the parties may introduce evidence...bearing upon valuation." (Corp. Code, § 2000, subds. (b), (c).) Based upon the procedure set forth in the April 12 order, Abrams selected I. M. Zeman as an appraiser, Rubaloff selected Ronald Karno, and Zeman and Karno together then selected Larry Grant of Business Enterprise Appraisal Company as the third appraiser.

In May 1978 Grant transmitted to counsel for both sides his appraisal valuing Abrams' shares as of February 22, 1977, at $355,000. In early June Zeman sent his appraisal, agreeing with Grant's valuation, to the attorneys. On June 16, 1978, Abrams moved the superior court for an order confirming the valuation determined by the majority of the appraisers. Subsequently, Karno filed a report concluding that the liquidation value of Abrams' interest was $139,750.

In the interim Rubaloff filed a demand for a jury trial (which the court denied), and noticed a deposition of Grant (which the court quashed). On July 26, 1978, Rubaloff filed a cross-complaint and statement of offsets against Abrams for general damages and $150,000 punitive damages allegedly caused by Abrams' material breach of his employment contract and subsequent violation of a covenant not to compete with the corporation, allegations which had already been resolved in Abrams' favor in an arbitration award confirmed by the superior court and affirmed by this court. Abrams successfully moved to strike the cross-complaint and statement of offsets as untimely and unauthorized in a section 2000 proceeding.

On December 15, 1978, the trial court found and confirmed that the fair value of Abrams' shares, "determined on the basis of the liquidation value but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation," (Corp. Code, § 2000, subd. (a)) was $355,000. Its decree ordered Rubaloff and the corporation to file an election indicating which of them would purchase Abrams' stock and to make payment by January 15, 1979, absent which the corporation would be wound up and dissolved.

DISCUSSION

*Appeal.*

■ 1. Rubaloff's first contention on appeal is that the procedure used by the appraisers and the trial court for valuing Abrams' shares was "fatally defective and prejudicial." Rubaloff complains he was not given an opportunity to examine witnesses interviewed by Grant, either during the interviews or at a full evidentiary hearing, and was not permitted to depose Grant. To support his contention that he was entitled to an evidentiary hearing he cites *Rice* v. *Brown* (1951) 104 Cal.App.2d 100 [231 P.2d 65], which held that a referee appointed pursuant to Code of Civil Procedure section 639 in an action for an accounting and dissolution of a partnership was required to hold a hearing and take testimony under oath. The court reasoned that an order of reference under the Code of Civil Procedure, which empowered the referee to examine parties and other witnesses, contemplated a quasi-judicial proceeding.

Corporations Code section 2000 established a special proceeding to enable a 50 percent shareholder to avoid dissolution of the corporation by purchasing the stock of the shareholder(s) seeking to dissolve the corporation. Because it is a special proceeding, it is governed by the terms and conditions set forth in the section itself, and not by the provisions of the Code of Civil Procedure, except when such provisions are expressly made applicable. (See *Woods-Drury Inc.* v. *Superior Court* (1936) 18 Cal.App.2d 340, 344 [63 P.2d 1184]; see also, *Boggs* v. *North America B. & M. Co.* (1937) 20 Cal.App.2d 316, 319 [66 P.2d 1253].) Section 2000 specifically states that the order referring the matter to appraisers "shall prescribe the time and manner of producing evidence, if evidence is required." At bench, the order of reference, which was drafted by counsel for Rubaloff, expressly left this matter to the appraisers. Section 2000 does not provide for a full evidentiary hearing, nor for depositions of the appraisers. Rather, the statute mere-

ly states that "[t]he award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties." (See also *Brown* v. *Allied Corrugated Box Co.* (1979) 91 Cal. App.3d 477 [154 Cal.Rptr. 170].) Clearly, the section contemplates a summary proceeding, and with good reason, for if the party seeking the appraisal is dissatisfied with the valuation, he may then choose to proceed with dissolution. (Corp. Code, § 2000, subds. (a), (b).) At bench, the procedure used by the appraisers and the trial court complied with the provisions of this section, and it was not required to comply with the provisions of the Code of Civil Procedure. We therefore reject Rubaloff's first contention.

■ 2. Rubaloff next contends the evidence was insufficient to support the trial court's finding that the fair value of Abrams' shares was $355,000. Corporations Code section 2000, subdivision (a) provides that the "fair value shall be determined on the basis of the liquidation value but taking into account the possibility, if any, of sale of the entire business as a going concern." The value of the shares is to be assessed by three appraisers, whose majority appraisal becomes binding upon the parties when confirmed by the court. (Corp. Code, § 2000, subd. (c); see also, *Brown* v. *Allied Corrugated Box Co., supra,* pp. 489, 491.)

At bench, Grant filed a 138-page report in which he concluded that the business could be sold as a going concern if Abrams and Rubaloff would agree not to compete with the business immediately after its sale. Grant opined that if, on the other hand, Abrams and Rubaloff intended to compete with the corporation after its sale, a prudent purchaser would not be likely to buy the business as a going concern. The corporation's contracts with its artists would have little or no value, and the corporation's tangible assets would probably be sold piecemeal at a lower market price than would be realizable if the business were sold as a going concern. In determining the value of the business if sold as a going concern under an agreement by Abrams and Rubaloff not to compete, he appraised the fair value of the business at $712,477, comprised of $462,477 of tangible assets and $250,000 of intangible assets, including artists' contracts and goodwill. Grant then concluded that the fair value of Abrams' 50 percent undivided interest was approximately $355,000. In valuing Abrams' interest in a forced liquidation, Grant reasoned that on liquidation of the business the shareholders would most likely divide the contracts between them, rather than sell them to a third party and start anew. Grant then determined that the net proceeds which the business would realize in a forced liquidation was

approximately $700,000, resulting in a value of $355,000 for Abrams' undivided half interest. Finally, although noting that section 2000 does not ask for a determination of this particular value, Grant calculated that the approximate going concern value of the corporation and its assets to Rubaloff and Abrams, rather than to a third-party purchaser, would be $965,000, or $482,500 for Abrams' half interest. Grant then concluded that the "fair value" of Abrams' share on February 22, 1977, as defined in section 2000, was $355,000. Zeman concurred in Grant's findings that the fair value of Abrams' undivided 50 percent interest in the corporation was $355,000, "whether the sale approach or the actual liquidation approach is used," and that under the going concern value to the parties, rather than on a sale to a third party, Abrams' share would be $482,500.

Rubaloff contends that Grant's and Zeman's appraisals are insufficient to support a trial court's finding that the fair value of Abrams' shares was $355,000, (1) because the reports were not executed under penalty of perjury and therefore did not constitute competent evidence, and, (2) because section 2000 does not allow for a computation based upon a hypothetical covenant not to compete. Both arguments are without merit.

Section 2000, subdivision (b) requires only that the appraisers submit their reports to the court. It does not require the reports to be verified. Evidence Code sections 710 and 165 cited by Rubaloff are inapplicable. Those sections pertain to testimony, not to reports. Since there is no provision for testimony or cross-examination of appraisers (see *Brown* v. *Allied Corrugated Box Co., supra*, 91 Cal.App.3d p. 491) verification of their written opinions would be a meaningless act. Moreover, Rubaloff's objection to the majority report on this ground, made 10 days after the hearing on Abrams' motion to confirm the majority report, was untimely.

Both Grant and Zeman determined that the fair value of Abrams' shares would be $355,000 in a forced liquidation, as well as in a sale of the business as a going concern. We think the appraisers properly considered a hypothetical covenant not to compete in evaluating a sale of the business as a going concern. Section 2000 states that the appraisers should consider the "possibility of a sale as a going concern in a liquidation." Under the statute, the appraisers are not only entitled, but are required, to consider the manner in which the parties to such a hypothetical sale are most likely to maximize their return. We conclude that

the trial court's findings and confirmation were supported by substantial evidence. We note again that if Rubaloff is dissatisfied with this result he is entitled under section 2000 and under the trial court's decree, to dissolve the corporation instead of purchasing Abrams' shares.

3. Rubaloff next argues that the appraisers and the trial court erred in not deducting taxes in determining the fair value of Abrams' shares. However, if Rubaloff elects to purchase Abrams' stock only Abrams will suffer tax consequences as a result. We therefore disagree with Rubaloff's claim that the alleged taxes on the corporation's assets in the event of an actual liquidation should reduce the fair value of Abrams' shares in the section 2000 proceeding.

4. We find no merit in Rubaloff's other contentions that the trial court erred (1) in failing to make certain requested findings, (2) in striking the cross-complaint and statement of offsets, and (3) in ordering Rubaloff and the corporation to decide which of them would purchase Abrams' shares.

*Cross-appeal.*

1. Abrams argues that the trial court erred in fixing the value of his shares at $355,000 rather than $482,500, the value of the corporation as a going concern to Abrams and Rubaloff. However, the express language of section 2000 specifically instructs that the fair value is to be "determined on the basis of the liquidation value," taking into account only the possibility "of sale of the entire business as a going concern in a liquidation." Accordingly, the trial court acted correctly in confirming the majority of the appraisers' valuation based upon the corporation's forced liquidation and/or sale as a going concern to a third party.

2. Finally, Abrams contends that the trial court erred in failing to award interest on the purchase price of his shares from February 22, 1977, the date on which the appraisers based their valuation of Abrams' shares. We reject this contention for two reasons: First, the pendency of the appraisal did not in any way alter Abrams' rights as a shareholder. Until Rubaloff or the corporation actually purchased Abrams' stock, Abrams would continue to enjoy any benefits accruing to him as a 50 percent shareholder, including the receipt of any dividends. Second, the election pursuant to section 2000 does not amount to a firm commitment to purchase, and the corporation could still be dissolved. We

conclude that Civil Code section 3287, subdivision (a), providing for interest on an award of damages, is inapplicable, that Abrams is not entitled to interest on the value of his shares from the date of valuation to the date of the decree.

The decree of the trial court staying the wind up and dissolution of Abrams-Rubaloff & Associates, Inc. is vacated, effective 10 days after this decision becomes final. At that time Abrams-Rubaloff & Associates, Inc. will be wound up and dissolved unless $355,000 together with interest from January 15, 1979, is paid to Harry Abrams on or before that date by Noel Rubaloff or Abrams-Rubaloff & Associates, Inc. In all other respects the decree of the trial court is affirmed. Costs on both appeals to be borne by Noel Rubaloff and Abrams-Rubaloff & Associates.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied January 19, 1981, and the petition of defendants and appellants for a hearing by the Supreme Court was denied March 18, 1981.