Filed 11/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARK GOLES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> UDAY SAWHNEY et al., <br><br> Defendants and Respondents. | 2d Civil No. B268990 <br> (Super. Ct. No. 56-2013-00446212-CU-MC-VTA) <br> (Ventura County) |

      Mark and Karen Goles appeal from an order specifying $139,666.67 as the buyout value of their 36.7% minority shareholder interest in Katana Software, Inc. (Katana) pursuant to Corporations Code section 2000, subd. (c).[1] The statutory buyout provision is a special proceeding. We construe the order as an alternative decree which is appealable pursuant to section 2000, subdivision (c). (*Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1380, fn. 4.) Appellants contend that the trial court undervalued their shares when it "confirmed" three disparate court-ordered appraisals and

---

[1] All statutory references are to the Corporations Code.

averaged the appraisals to determine the fair value of the company.  We reverse.

*Procedural History*

Katana, a closely held corporation, is a software development company.  As indicated, appellants owned 36.7 percent of the company.  Respondent Robert F. Woodward owned 31.7 percent, and respondent Uday Sawhney owned 31.6 percent.  Appellants were founding shareholders and employed by Katana in key positions.  In 2013, appellants were terminated after they solicited a company executive to take Katana's intellectual property and client lists for a new start-up company.

Appellants sued for the involuntary dissolution of Katana (§ 1800) and sought an accounting, injunctive relief, damages for breach of fiduciary duty, and $60,000 due on a promissory note.  To avoid dissolution, respondents brought a motion to appraise the fair value of the company and buy out appellants' shareholder interest pursuant to section 2000.  Respondents requested a stay of the dissolution action and the causes of action for breach of fiduciary duty.[2]  The trial court stayed the proceedings and appointed three disinterested appraisers to ascertain the fair value of Katana and appellants' shares.  The order stated:  "There shall be no direct or indirect

_____

[2] The complaint includes personal actions for negligent preparation of appellants' tax returns (sixth cause of action) and $60,000 due on the promissory note obligation (seventh cause of action).  The trial court granted appellants' request to bifurcate the sixth and seventh causes of action for trial.  Respondents, in their motion to stay the other causes of action, argued that the breach of fiduciary duty claims (third, fourth, and fifth causes of action) were not personal claims and should be stayed with the dissolution action until the appraisals were completed.

2

contact or communication between any appraiser, on the one hand, and any party or their counsel, on the other hand, without a showing of good cause and prior order of the Court." The appraisers were instructed to base the appraisals on the company's "'liquidated value as of December 20, 2013 but taking into account the possibility, if any, of the sale of the entire business as a going concern in liquidation.'"

Appraisers Carl L. Sheeler, Jason E. Forsyth, and Burton H. Marcus submitted appraisal reports valuing appellants' shares at $69,000, $150,000, and $200,000 respectively. Respondents requested a hearing to finalize the valuation and shareholder buyout. Appellants questioned the appraisals and requested that the trial court set a briefing schedule. The trial court denied the request and found that the fair value of appellants' interest in Katana "is $139,666.67, which sum is calculated by averaging the three appraisal report valuations together."

Respondents tendered full payment. Appellants deposited the funds in a trust account and appealed. The trial court denied a motion to stay the judgment pending the appeal and ordered appellants to deliver the Katana stock certificates to respondents. They did so. (§ 2000, subd. (d).)

*Shareholder Buyout*

A section 2000 shareholder buyout is a special proceeding that supplants an action for involuntary dissolution of a corporation. (*Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 532.) Section 2000 provides that when a shareholder sues for involuntary dissolution, the corporation, or the holders of 50 percent or more of the voting power of the corporation, may avoid the dissolution by purchasing for cash the

shares owned by plaintiffs at their "fair value." (§ 2000, subd. (a).) The statute defines "fair value" as the "liquidation value as of the valuation date but taking into account the possibility, if any, of sale of the entire business as a going concern in a liquidation." (*Ibid*.) If the parties cannot agree on a valuation, the trial court shall appoint three disinterested appraisers to appraise the fair value of the shares. (§ 2000, subd. (c).) "The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or of a majority of them, when confirmed by the [trial] court, shall be final and conclusive upon all parties." (*Ibid*.)

Here the appraisers could not reach a consensus on the fair value of the company or appellants' shares. The trial court nonetheless "confirmed" the appraisal reports, averaged the three appraisals, and found that the fair value of appellants' shareholder interest was $139,666.67.

*Standard of Review*

Appellants contend that the buyout order must be reversed because the trial court's determination of the fair value of appellants' shareholder interest was erroneous as a matter of law. The factual aspects of the fair value determination are reviewed under the substantial evidence standard. (*Mart v. Severson* (2002) 95 Cal.App.4th 521, 530.) "However, the superior court's interpretation of the statutory standard set forth in section 2000 is subject to de novo review on appeal. [Citations.]" (*Ibid*.; *Cotton v. Expo Power Systems, Inc.*, *supra*, 170 Cal.App.4th at p. 1380.)

4

*Derivative Claims as a Fair Value Factor*

Appellants' complaint includes derivative claims for breach of fiduciary duty.[3] It alleges that respondents "looted" the corporation by taking unauthorized loans, employed family members, used corporate funds to pay personal expenses, and purposefully neglected corporate governance. Paragraph 51 of the third cause of action prays for $53,100 damages on behalf of Katana based on an unauthorized loan of corporate funds. The claim is re-alleged in the fourth and fifth causes of action for breach of fiduciary duty by board members and controlling shareholders.

"A derivative claim (or other claim that may yield a potential recovery for the corporation) is a corporate asset that must be considered when determining 'fair value.'" (Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2016) ¶ 8:873.6, p. 8-176; see *Cotton v. Expo Power Systems, Inc.*, *supra*, 170 Cal.App.4th at p. 1380.) "If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it. [Citations.]" (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1114.)

None of the derivative claims were considered by the appraisers or the trial court in determining the fair value of Katana. This was erroneous. (See *Cotton v. Expo Power Systems*,

---

[3] A single cause of action by a shareholder can give rise to derivative claims, individual claims, or both. (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1222.) "The claims are derivative where the injury alleged is one inflicted on the corporate entity or on the 'whole body of its stock.' [Citation.]" (*Ibid.*, citing *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106.)

*Inc.*, *supra*, 170 Cal.App.4th at p. 1374; *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1485 [dismissal of derivative claim requires court approval].) Where a minority shareholder claims that his shares were undervalued because of self-dealing and misconduct by corporate directors and officers, he should be afforded the opportunity to demonstrate that the alleged misconduct in fact occurred. (See, e.g., *Steinberg v. Amplica, Inc.* (1986) 42 Cal.3d 1198, 1208-1209 [fraud and breach of fiduciary duty claims must be considered by appraiser in determining fair value of dissenting shareholder's interest in corporate merger].) "[A] determination of the fair value of the shares of a corporation under section 2000 includes an assessment of the value, if any, of pending derivative actions and their effect on the fair value of the shares. The trial court's order in this case did not comply with the provisions of section 2000, and therefore, must be reversed." (*Cotton v. Expo Power Systems*, *Inc.*, *supra*, 170 Cal.App.4th at p. 1374.)

*Discount for Lack of Control*

The Marcus and Forsyth appraisals discounted the fair value of appellants' shareholder interest by 20 percent and 15 percent for lack of control. Section 2000, however, does not permit a lack-of-control discount when determining the fair value of a minority shareholder interest. (Friedman et al., Cal. Practice Guide: Corporations, *supra*, ¶ 8:876, p. 8-178; *Ronald v. 4-C's Elec. Packaging* (1985) 168 Cal.App.3d 290, 298.) "[T]he rule justifying the devaluation of minority shares in closely held corporations for their lack of control has little validity when the shares are to be purchased by someone who is already in control of the corporation. In such a situation, it can hardly be said that the shares are worth less to the purchaser because they are

6

noncontrolling.  [Citation.]" (*Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477, 486.)  The trial court erroneously did not follow section 2000 because it averaged the three appraisals, two of which used a lack-of-control discount to determine the fair value of appellants' shareholder interest.

*De Novo Determination of Fair Value*

Respondents argue that the trial court was not bound by the appraisals and was authorized to examine the matter de novo and set the correct value.  (See Friedman et al., Cal. Practice Guide:  Corporations, *supra*, ¶ 8:885, p. 8-179; *Cotton v. Expo Power Systems, Inc.*, *supra*, 170 Cal.App.4th at p. 1376; *Venables v. Credential Ins. Agency, Inc.* (1956) 140 Cal.App.2d 724, 727 [trial court rejected unanimous appraisal report and determined fair value de novo].)  But that did not happen.  The trial court "confirmed" the appraisal reports "in their entirety" and found that the fair value of appellants' interest in Katana is calculated by averaging the three appraisal report valuations together.   There is no provision in the Corporations Code for this averaging methodology.

Section 2000, subdivision (c) provides that "[t]he award of the appraisers or of a majority of them, *when confirmed by the court*, shall be final and conclusive upon all parties." (Italics added.)  But such an *award* requires that at least two of the appraisals reach a consensus on fair value.  (See, e.g., *Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 248; *Brown v. Allied Corrugated Box Co.*, *supra*, 91 Cal.App.3d at pp. 489, 491.)  Here, the trial court *confirmed* all three appraisal reports even though there was no consensus.  If the trial court intended to determine fair value de novo, it could not do so by "confirming" the appraisals and taking the mathematical average

7

of defective appraisals that use a lack-of-control discount and do not consider the derivative claims.

In *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469, defendant invoked the appraisal provisions of section 17351 to buy out plaintiff's interest in a limited liability company. Section 17351, which is identical to section 2000, provided that the trial court could appoint three appraisers and that the unanimous or majority award of the appraisers would be final and conclusive on all parties upon its confirmation by the court. (§ 17351, subd. (b)(3).) Because the appraisals were $0, $56,000 and $286,000, there was no award by a majority of the appraisers to confirm. (*Id.*, at p. 479, fn. 2.) The trial court took the mean value of the three appraisals and found that the fair value was $147,333.33. (*Ibid.*) The Court of Appeal dismissed the appeal as untimely but, in dicta, stated that the trial court was "free to select among conflicting appraisals or decide the matter de novo. [Citations.]" (*Id.*, at p. 475.) We need not, and do not, decide whether this dictum is "good law."

Unlike *Dickson*, the trial court could not select among conflicting appraisals or decide the matter de novo unless 1. the derivative claim was considered, and 2. the "lack of control" discount was removed from consideration.

Respondents seek solace in the traditional appellate rule that a trial court's unsound reasoning should not be utilized to impeach its result if the result is correct. Phrased otherwise, "[i]t is established that on appeal we review the decision of the trial court rather than its reasoning, and thus '. . . a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be

8

sustained regardless of the considerations that moved the lower court to its conclusion.'" (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568.) We ourselves have applied this rule. (*Lewow v. Surfside III Condominium Owners Assn., Inc.* (2012) 203 Cal.App.4th 128, 129.) Based upon this record, we cannot say that the result was correct.

<em>Disposition</em>

The judgment is reversed. On remand, the trial court is ordered to obtain a majority fair value appraisal that takes into account the derivative claims and does not use a lack-of-control discount. In the alternative, the trial court may take evidence on the derivative claims and make a de novo determination of the fair value of appellants' shareholder interest, consistent with section 2000. (*Cotton v. Expo Power Systems, Inc., supra*, 170 Cal.App.4th at p. 1383.) Appellants are awarded costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.

9

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____

Ferguson Case Orr Paterson, John A. Hribar and Wendy C. Lascher; Law Offices of Larry D. Webb, Larry D. Webb, for Appellants.

Glaser Weil Fink Howard Avchen & Shapiro, Andrew Baum, Elizabeth G. Chilton, for Respondents.